**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Newport News Division

VALENCIA MANNING,

     Plaintiff,

     v.

CITY OF CHESAPEAKE,

     Defendant.

Case No. 4:23-cv-52

## OPINION & ORDER

This matter is before the Court on the City of Chesapeake's ("City") Motion to Strike, ECF No. 35, and Motion for Summary Judgment, ECF No. 26. The Court has considered the arguments in the briefing and concludes there is no need to hold a hearing on the motions. *See* Fed. R. Civ. P. 78; E.D. Va. Loc. Civ. R. 7(J). For the reasons set forth below, the City's Motion to Strike (ECF No. 35) is **DENIED**, the City's Motion for Summary Judgment (ECF No. 26), is **GRANTED**, and this civil action is **DISMISSED**.

## I.    PROCEDURAL BACKGROUND

Plaintiff Valencia Manning, appearing *pro se*, filed this action against the City to redress alleged violations of the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964, and the Fourteenth Amendment to the United States Constitution. ECF No. 3. The City moved to dismiss all of the plaintiff's claims. ECF No. 6. In a Memorandum Order entered on January 24, 2024, the Court dismissed all of the plaintiff's claims except for her ADA failure to accommodate claim. ECF No. 10.

On July 23, 2024, the City filed a Motion for Summary Judgment and notified the plaintiff, in accordance with Local Civil Rule 7(K), of her right to respond to the motion. ECF No. 26 at 1–3; *see* E.D. Va. Loc. Civ. R. 7(K). The plaintiff filed a timely Response to the City's Motion for Summary Judgment. ECF No. 28. On August 7, 2024, the Court provided the plaintiff with an opportunity to file an additional response to the City's motion, if she wished to do so, within 21 days. ECF No. 29 at 1–2. The plaintiff filed an additional response ("Additional Response") on September 5, 2024, after the expiration of her filing deadline. ECF No. 34.

The City filed a Motion to Strike, in which it asks the Court to strike the plaintiff's untimely Additional Response from the record. ECF No. 35. The plaintiff did not respond to the City's Motion to Strike. To the extent that the Court chooses to consider the plaintiff's Additional Response, the City also filed a Reply in support of its summary judgment motion. Reply, ECF No. 37.

The City's Motion to Strike and Motion for Summary Judgment are ripe for adjudication.

## II.    THE CITY'S MOTION TO STRIKE

As noted above, the Court ordered the plaintiff to file her Additional Response to the City's summary judgment motion within 21 days of the Court's August 7, 2024 Order. ECF No. 29 at 1. The plaintiff, who resides in Jackson, Mississippi, mailed her Additional Response to the Court on August 30, 2024. ECF No. 34-1 at 1. The document was received by the Court—and filed—on September 5, 2024. ECF No. 34. The City asks the Court to strike the plaintiff's untimely Additional Response. ECF No. 35. While the City recognizes that the plaintiff's filing delay "may appear

negligible at first blush," the City argues that the plaintiff has demonstrated a "pattern" of missing court-imposed deadlines throughout the course of this litigation. ECF No. 36 at 3–4 (summarizing the plaintiff's alleged "inability to comply" with Court directives).

In deference to the plaintiff's *pro se* status, in recognition of the plaintiff's out-of-state residency, and in the interest of deciding the City's summary judgment motion on the full record, the Court will excuse the untimeliness of the plaintiff's Additional Response. Accordingly, the City's Motion to Strike (ECF No. 35) is **DENIED**. The Court has considered the plaintiff's Additional Response, as well as the City's Reply, in its analysis of the City's Motion for Summary Judgment.

## III.   THE CITY'S MOTION FOR SUMMARY JUDGMENT

### A.   Legal Standard

Summary judgment is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine dispute "as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see Seabulk Offshore, Ltd. v. Am. Home Assur. Co.*, 377 F.3d 408, 418 (4th Cir. 2004); *see also* Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party' . . . [and] [a] fact is material if it 'might affect the outcome of the suit under the governing law.'" *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015) (citations omitted). The moving party has the initial burden to show the absence of an essential element of the nonmoving party's case and to demonstrate that the moving party is entitled to judgment as a

matter of law. *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 185 (4th Cir. 2004); *McLean v. Patten Cmtys., Inc.*, 332 F.3d 714, 718 (4th Cir. 2003); *see Celotex*, 477 U.S. at 322–25.

When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden then shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Honor*, 383 F.3d at 185; *McLean*, 332 F.3d at 718–19. To successfully defeat a motion for summary judgment, the nonmoving party must rely on more than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of evidence," or the appearance of "some metaphysical doubt" concerning a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002); *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 330 F. Supp. 2d 668, 671 (E.D. Va. 2004); *Matsushita Elec. Indus. Co.*, 475 U.S. 574, 586. Rather, there must be sufficient evidence that would enable a reasonable fact-finder to return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 252.

Although the Court is not "to weigh the evidence and determine the truth of the matter" at the summary judgment phase, the Court is required to "determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249); *see Jacobs*, 780 F.3d at 568–69. Thus, "[t]he relevant inquiry is 'whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Stewart v. MTR Gaming Grp., Inc.*, 581 F. App'x 245, 247 (4th Cir. 2014) (unpublished) (quoting *Anderson*, 477 U.S. at 251–52).

### B.    Statement of Undisputed Material Facts

For purposes of the City's Motion for Summary Judgment, the following are the undisputed material facts that are relevant to the plaintiff's ADA failure to accommodate claim and are adequately supported by materials in the record:[1]

On February 22, 2016, the plaintiff began working for the City as a Benefits Worker II for the Department of Human Services. ECF No. 27-1 at 8–9; ECF No. 27-10 ¶ 3. As a Benefits Worker II, the plaintiff was responsible for "determin[ing] and re-determin[ing] the level of benefit eligibility of applicants/current clients for

---

[1] When a party moves for summary judgment, the moving party is required to "include a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue," and to cite "the parts of the record relied on to support the listed facts as alleged to be undisputed." E.D. Va. Loc. Civ. R. 56(B); *see* Fed. R. Civ. P. 56(c)(1). The nonmoving party's response brief "shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute." E.D. Va. Loc. Civ. R. 56(B); *see* Fed. R. Civ. P. 56(c)(1).

In its Motion for Summary Judgment, the City lists the material facts that it contends are undisputed in this action and cites to the record to support its contentions. ECF No. 27 at 4–8. Neither the plaintiff's Response nor the plaintiff's Additional Response includes "a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated." E.D. Va. Loc. Civ. R. 56(B); *see* ECF No. 28; ECF No. 34. However, the plaintiff cites to parts of the record in her Additional Response and attaches several documents thereto. ECF No. 34. In deference to the plaintiff's *pro se* status, the Court has thoroughly reviewed all of the plaintiff's submissions, despite their defects, to determine whether there exists any genuine dispute of material fact and whether the City is entitled to summary judgment.

financial, medical, or nutritional assistance under government programs." ECF No. 27-2 at 4. According to the applicable job description, the primary duties of a Benefits Worker II include:

- Schedul[ing] appointments and interview[ing] applicants/clients; explain[ing] client rights and responsibilities according to local, state, and federal regulations and laws governing the programs; explain[ing] temporary assistance programs.

- Serv[ing] as lead worker; instruct[ing]/train[ing] other personnel, and . . . giv[ing] assignments to same; mak[ing] recommendations based on professional expertise.

- Assist[ing] applicants/clients in securing verification of financial, medical, and social information; notif[ying] supervisor of possible fraud cases.

- Determin[ing] employability of clients; establish[ing] client needs, and mak[ing] referrals to other departments within and outside the agency as needed; explor[ing] other possibilities for income for clients.

- Collect[ing], organiz[ing], analyz[ing], and document[ing] data in determination of most beneficial assistance plan for client; check[ing] data calculations for accuracy; determin[ing] or re-determin[ing] program(s) for which [clients are] eligible.

- Grant[ing] or den[ying] benefits and notif[ying] recipient of determination.

- Plan[ning], manag[ing] and implement[ing] case actions.

- Enter[ing] or updat[ing] information/data in computer database; run[ning] VEC and DMV checks on applicants/clients.

- Perform[ing] routine office tasks such as typing correspondence, data entry, preparing periodic and special reports for supervisor, filing, faxing, telephoning, and photocopying.

- Perform[ing] other related duties as assigned.

*Id.*; *see* ECF No. 27-1 at 9–10 (providing deposition testimony regarding the plaintiff's job duties as a Benefits Worker II).

In February of 2022, the plaintiff was diagnosed with stress and anxiety. ECF No. 27-1 at 15–17. The plaintiff was approved to take leave under the Family and Medical Leave Act ("FMLA") from April 29, 2022, until the plaintiff exhausted her FMLA leave on July 22, 2022. ECF No. 27-2 at 6–7, 10–11, 14–15; ECF No. 27-1 at 35; ECF No. 27-10 ¶ 5.

On May 13, 2022, approximately two weeks after the plaintiff began her FMLA leave, the plaintiff was approved for short-term disability. ECF No. 27-2 at 19–20, 22–23. As of July 22, 2022, when the plaintiff exhausted her FMLA leave, the plaintiff's doctor "wouldn't clear [the plaintiff]" to return to work. ECF No. 27-1 at 37. As a result, the plaintiff remained out of work on short-term disability. *Id.* at 36–37; ECF No. 27-10 ¶ 5.

The plaintiff "begged" her doctor to allow her to return to work. ECF No. 27-1 at 37. In August of 2022, the plaintiff's doctor indicated that the plaintiff could return to work with certain restrictions. ECF No. 27-5 at 3–4; ECF No. 34 at 6–14. The restrictions included: "20% [l]ess caseload; the ability to work from home (i.e., telework); and reduced hours (i.e., 33 hours per week)." ECF No. 27-5 at 4; ECF No. 34 at 7–8; ECF No. 27-1 at 37–38. On August 17, 2022, the Reed Group[2] requested that the plaintiff be allowed to return to work on August 31, 2022, with the

---

[2] The Reed Group is a third-party vendor that the City uses "to process and manage short- and long-term disability claims made by City employees." ECF No. 27-10 ¶ 6.

above restrictions in place until September 20, 2022. ECF No. 27-2 at 24–25; ECF No. 27-10 ¶ 8. The City approved the request. ECF No. 27-10 ¶ 8; ECF No. 27-1 at 38.

The job responsibilities of a Benefits Worker II are time sensitive. ECF No. 27-1 at 26 (explaining the timing requirements for processing expedited and standard cases assigned to a Benefits Worker II). Thus, if a Benefits Worker II is "given a lower caseload," the cases previously assigned to that worker would "be assigned to somebody else in the office." *Id.* at 27. During her deposition, the plaintiff testified:

> Q:  So if your caseload was -- just for argument's sake, say, you had 800 cases and you were granted a reduced caseload of 600 cases.
>
> We are now talking about 200 cases that need to be reassigned elsewhere?
>
> A:  Yes.
>
> Q:  So that would then be additional work that would be assigned to other employees within the benefits unit or to somebody else in the Department of Human Services; is that correct?
>
> A:  Yes, but it does not have to go to a benefits program worker.
>
> Q:  But it still needs to be done by somebody within the Department of Human Services; is that correct?
>
> A:  Correct.

*Id.* at 28–29.

On September 15, 2022, as the plaintiff's approved accommodations period was coming to a close, the Reed Group inquired as to whether the City could continue to allow the plaintiff to work under the same restrictions (i.e., teleworking with a 20%

reduced caseload and only 33 hours per week) through March 13, 2023. ECF No. 27-3 at 1–4. The City determined that it could not do so. *Id.*

On September 20, 2022, when the plaintiff's approved accommodations period expired, the plaintiff had not been cleared by her doctor to return to work full-time. ECF No. 27-1 at 48–49. Nevertheless, the City did not terminate the plaintiff's employment. Instead, the plaintiff was placed back on short-term disability leave. *Id.* at 42; ECF No. 27-10 ¶ 10. Around this time, the plaintiff's medical condition worsened, the plaintiff exhausted her short-term disability leave, and the plaintiff was approved for long-term disability leave from October 28, 2022 through April 28, 2024. ECF No. 27-1 at 65; ECF No. 27-2 at 28–29; ECF No. 27-10 ¶¶ 11, 16.

On November 3, 2022, Jennifer Bailey, who works in the City's Human Resources Department, called the plaintiff "to request [an] updated medical certification and to see if [the plaintiff] was potentially interested in a job reassignment." ECF No. 27-10 ¶ 12. The plaintiff "indicated that she was interested in returning to work"; however, the plaintiff did not provide any updated medical information. *Id.*

Bailey followed up with the plaintiff via email on December 1, 2022. ECF No. 27-4 at 1–2. In her email, Bailey stated:

> Per our last conversation on November 3rd, you were going to be working with your doctor to provide us with updated restrictions.
>
> As of today, I have not received any information. Your department is unable to work with the restrictions you had previously provided, and you stated you did not think your doctor would be changing or revising the restrictions . . . .

> There is an option under the ADA to request an
> accommodation, such as a job reassignment. I have
> attached the forms here for you in the event you would like
> to move forward with this request.

*Id.* at 2. In another email sent on December 2, 2022, Bailey advised the plaintiff that
any reasonable accommodation request form would be due within 5 workdays, and
any medical certification form would be due within 20 calendar days. *Id.* at 1.

On December 7, 2022, the plaintiff emailed Bailey a copy of the ADA
paperwork that the plaintiff's doctor submitted to the City back in August of 2022.
ECF No. 27-5 at 1–4. While the plaintiff claimed that "there [were] no changes" to the
paperwork, the plaintiff did not provide any updated certification from her doctor that
confirmed her statement. *Id.* Bailey responded to the plaintiff's email approximately
one hour later and stated:

> The department is not able to work with the restrictions
> your Doctor provided as it was relayed to you previously
> when your Short Term Disability ended.
>
> The purpose of my previous email was to determine if you
> are interested in a job reassignment under [the] ADA.
>
> If so, please complete the request form (attached here for
> you again as well) and indicate that on the form.
>
> Once I receive confirmation of your request, I can start
> reviewing vacancies within the City for you.
>
> I will then send you a list of options for you to review and
> we can discuss further as well at that time.

ECF No. 27-9 at 1.

On December 20, 2022, Bailey emailed Pamela Little-Hill, who serves as the
Director of the Department of Human Services, to see whether there were any

positions available "that would work with [the plaintiff's] restrictions." ECF No. 27-6 at 1; ECF No. 27-10 ¶ 14. Little-Hill advised Bailey that there were no available part-time positions in the department. ECF No. 27-7 at 1. However, Little-Hill further advised Bailey that the City would be willing to allow the plaintiff to return to work with her initial restrictions until March of 2023. *Id.*; ECF No. 27-10 ¶ 14. Bailey relayed Little-Hill's message to the plaintiff, and the plaintiff indicated that she needed to contact her doctor. ECF No. 27-8 at 6.

Weeks passed without any communication from the plaintiff. *Id.* On January 18, 2023, Bailey emailed the plaintiff and stated:

> I am reaching out to you regarding your return to work. The last time we spoke was right before the Christmas Holiday and I explained to you that your department would be able to work with your restrictions that had been set previously by your doctor until March of 2023.
>
> You stated you would need to contact your doctor as she recommended you stay out of work as your LTD had been approved and felt it would be best for you to continue to be out.
>
> The restrictions we can accommodate are listed below:
>
> Less case load 20%
> No more than 33 hours a week
> Telework
>
> Have you been able to speak with your doctor? We do need to have an update no later than next Wednesday, 1/25 as to whether you are going to be returning to work with restrictions or not.

ECF No. 27-8 at 6.

On January 26, 2023, Bailey spoke with the plaintiff on the telephone and summarized their discussion in a follow-up email. ECF No. 27-8 at 4–5. During the

conversation, the plaintiff told Bailey that the plaintiff "ha[d] been approved for Long Term Disability" and the plaintiff was "not sure why [Bailey] keeps asking [the plaintiff] about returning to work." *Id.* at 5. The plaintiff also told Bailey that the plaintiff's "doctor has not cleared [the plaintiff] to return to work at all." *Id.* In the follow-up email, Bailey stated: "Based on this information, you are not cleared to return to work in any position, therefore we are unable to provide any additional job reassignment under the ADA." *Id.*

The plaintiff replied to Bailey's email on January 30, 2023, and in her reply, the plaintiff expressed frustration with the manner in which the City had dealt with the plaintiff's health issues. ECF No. 27-8 at 3–4. Bailey offered to meet with the plaintiff to discuss her concerns; however, the plaintiff did not respond to Bailey's offer. *Id.* at 1–2; ECF No. 27-10 ¶ 15. On February 9, 2023, Bailey sent the plaintiff an email that stated:

> I am following up with you from my previous email as we have not received a response from you.
>
> We wanted to provide you with an additional opportunity to reach out to us to discuss your concerns and provide any assistance regarding an accommodation under the ADA.
>
> Please reach out to discuss no later than Friday, February 17, 2023.
>
> If we do not hear from you by close of business that day, we will accept your nonresponse as declining an ADA accommodation.

ECF No. 27-8 at 1. The plaintiff never responded to Bailey's email. ECF No. 27-10 ¶ 15.

The plaintiff's last day of work with the City was September 20, 2022, and the plaintiff was approved to be on long-term disability through April 28, 2024. ECF No. 27-2 at 2, 28; ECF No. 27-10 ¶ 16. The City ultimately determined that the Department of Human Services was "unable to accommodate an extended absence to April 29, 2024." ECF No. 27-2 at 2. As a result, the City terminated the plaintiff's employment on March 22, 2023. *Id.* at 1–2; ECF No. 27-10 ¶ 16. In the plaintiff's termination letter, the City advised the plaintiff that she remained "eligible for rehire" and encouraged the plaintiff "to apply for employment with the City in the future if [the plaintiff] [is] cleared by [her] healthcare provider." ECF No. 27-2 at 2.

## C.   Analysis

The ADA prohibits a covered employer from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *see Tartaro-McGowan v. Inova Home Health, LLC*, 91 F.4th 158, 165 (4th Cir. 2024). "Discrimination can include failing to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'" *Tartaro-McGowan*, 91 F.4th at 165 (quoting 42 U.S.C. § 12112(b)(5)(A)); *see Hannah v. UPS*, 72 F.4th 630, 635 (4th Cir. 2023).

To survive summary judgment on an ADA failure to reasonably accommodate claim, "a plaintiff must show: (i) she was disabled, (ii) the employer had notice of her disability, (iii) she could perform the essential functions of her position with a

13

reasonable accommodation, and (iv) the employer refused to make such accommodation." *Tartaro-McGowan*, 91 F.4th at 165 (quoting *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 378 (4th Cir. 2022)); *see Hannah*, 72 F.4th at 635; *Perdue v. Sanofi-Aventis U.S., LLC*, 999 F.3d 954, 959 (4th Cir. 2021); *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001); *Ainsworth v. Loudon Cnty. Sch. Bd.*, 851 F. Supp. 2d 963, 980 (E.D. Va. Mar. 16, 2012).

"The ADA does not provide an all-inclusive definition of the term 'reasonable accommodation.'" *Tartaro-McGowan*, 91 F.4th at 166. Instead, the ADA provides a list of what *may* be considered to be a reasonable accommodation, including: "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities."[3] 42 U.S.C. § 12111(9)(B).

---

[3] Although reassignment to another position may be considered a reasonable accommodation under certain circumstances, "[i]t is the plaintiff's burden to show that a vacant position exists for which he [or she] [is] qualified." *Coleman v. Portfolio Recovery Assocs.*, No. 2:17-cv-204, 2019 WL 11585359, at *13 (E.D. Va. Apr. 17, 2019) (first two alterations in original) (quoting *Fields v. Clifton T. Perkins Hosp.*, 605 F. App'x 200, 201 (4th Cir. 2015) (unpublished)). "[I]f there is no vacant position for which the plaintiff qualifies, then failure to reassign the employee does not constitute a breach of the employer's duty to reasonably accommodate the employee's disability." *Id.* (quoting *Fields*, 605 F. App'x at 201); *see Perdue v. Sanofi-Aventis U.S., LLC*, 999 F.3d 954, 960 (4th Cir. 2021) (explaining that "the ADA only requires 'reassignment to a *vacant* position' as an accommodation for an employee with a disability" and noting that "the ADA does not require that an employer create a new position for a disabled employee" (citations omitted) (italics in original)).

Courts recognize that there may be a broad range of potential reasonable accommodations in any particular matter. *Tartaro-McGowan*, 91 F.4th at 166. "For that reason, an employer is not necessarily required to 'provid[e] the exact accommodation that the employee requested.'" *Id.* at 167 (quoting *Reyazuddin v. Montgomery Cnty.*, 789 F.3d 407, 415 (4th Cir. 2015)). Instead, when "an employee may be accommodated through a variety of measures, the employer, exercising sound judgment, possesses the ultimate discretion over these alternatives." *Id.* (quoting *Elledge v. Lowe's Home Ctrs., LLC*, 979 F.3d 1004, 1011 (4th Cir. 2020)). As the United States Court of Appeals for the Fourth Circuit has explained, "as long as the employer's chosen accommodation is reasonable, even if not perfect, our inquiry is at an end—'not even a well-intentioned court may substitute its own judgment for the employer's choice.'" *Id.* (quoting *Elledge*, 979 F.3d at 1012); *see Hannah*, 72 F.4th at 636–37 (stating that "it is well settled that the 'ultimate discretion' to choose among reasonable accommodations rests with the employer" and noting that a plaintiff's preference "to be accommodated in some other way does not support a claim of discrimination under the ADA" (citation omitted)).[4]

An employer is not required to provide a disabled employee with an accommodation that is unreasonable. *Williams v. Md. Dep't of Health*, No. 22-1074,

---

[4] On a related note, an employer may receive an opinion from the doctor of a disabled employee regarding potential accommodations. "While a . . . doctor's opinion regarding an accommodation should be considered by the employer, the ADA doesn't bind the employer to that opinion" if there is another proposed accommodation that is "reasonable under the circumstances." *Tartaro-McGowan v. Inova Home Health, LLC*, 91 F.4th 158, 170 (4th Cir. 2024).

2024 WL 2746979, at *3 (4th Cir. May 29, 2024).[5] An accommodation may be considered unreasonable if it "imposes undue financial or administrative hardship on the employer, is unlikely to allow the employee to successfully perform the functions of his [or her] job, or . . . requires a fundamental modification of the position." *Id.*; *see Hannah*, 72 F.4th at 635 (explaining that "an accommodation is not reasonable if it does not 'enable[] the employee to perform the essential functions of the job'" (alteration in original) (citation omitted)). Additionally, the Fourth Circuit has explicitly stated that "[a]n accommodation is not reasonable if it requires other employees to work harder or the employer to hire additional staff to perform the essential functions of the disabled employee." *Boone v. Bd. of Governors of the Univ. of N.C.*, 858 F. App'x 622, 623 (4th Cir. 2021) (unpublished); *see Elledge*, 979 F.3d at 1013 (explaining that although employers must reasonably accommodate their disabled employees, "employers do not need to change a job's essential functions or split them across multiple employees" or "require other employees to work 'harder or longer'" (citations omitted)); *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 323 (4th Cir. 2011) (unpublished) (stating that "the ADA does not require an employer to reallocate essential job functions" and noting that the reduction of a disabled employee's caseload, which in turn increases the workload of others, is an

---

[5] Certain cases cited by the Court in this Opinion and Order, including *Williams v. Md. Dep't of Health*, No. 22-1074, 2024 WL 2746979, at *1–6 (4th Cir. May 29, 2024) (unpublished), involved claims asserted under the Rehabilitation Act of 1973, as opposed to the ADA. However, failure to accommodate claims brought pursuant to the Rehabilitation Act of 1973 are analyzed under the same standards as such claims brought pursuant to the ADA. *Boone v. Bd. of Governors of the Univ. of N.C.*, 858 F. App'x 622, 623 (4th Cir. 2021).

unreasonable accommodation because it "would require other employees to work harder" (citation omitted)); *Jordan v. Sch. Bd.*, No. 2:22-cv-167, 2023 WL 5807844, at *7 (E.D. Va. Sept. 7, 2023) (explaining that "an employer does not have to provide 'an accommodation that would require other employees to work harder' nor does the employer have to change 'the essential functions of' the position to accommodate an employee").

Notably, it is the plaintiff who "bears the burden of identifying an accommodation that would allow a qualified individual to perform the job, as well as the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable." *Shin v. Univ. of Md. Med. Sys. Corp.*, 369 F. App'x 472, 481 (4th Cir. 2010) (unpublished); *see Williams*, 2024 WL 2746979, at *4 (noting that "an employer who fails to engage in the interactive process will not be held liable if the employee cannot identify a reasonable accommodation that would have been possible" (citation omitted)).

In the instant action, the plaintiff claims that the City failed to reasonably accommodate her disability. ECF No. 3 at 4. As summarized above, after being diagnosed with stress and anxiety, the plaintiff took 12 weeks of FMLA leave, i.e., from April 29, 2022 through July 22, 2022. ECF No. 27-2 at 6–7, 10–11, 14–15; ECF No. 27-1 at 35; ECF No. 27-10 ¶ 5. Because the plaintiff was not medically cleared to return to work after she exhausted her FMLA leave, the plaintiff remained out of work on short-term disability. ECF No. 27-1 at 35–37; ECF No. 27-10 ¶ 5. The City later approved a request for the plaintiff to return to work with certain restrictions,

including "20% [l]ess caseload; the ability to work from home (i.e., telework); and reduced hours (i.e., 33 hours per week)." ECF No. 27-5 at 4; ECF No. 34 at 7–8; ECF No. 27-1 at 37–38. The restrictions were approved on a temporary basis, from August 31, 2022 through September 20, 2022. ECF No. 27-2 at 24–25; ECF No. 27-10 ¶ 8. When the approved accommodations period expired, the plaintiff remained medically unable to return to work on a full-time basis. ECF No. 27-1 at 48–49. The Reed Group asked if the City could allow the plaintiff to continue teleworking, with a 20% reduced caseload and only 33 hours per week, through March 13, 2023. ECF No. 27-3 at 1–4. The City determined that it could not do so. *Id.* However, the City did not terminate the plaintiff's employment at that time. Instead, the plaintiff was placed back on short-term disability leave, and when the plaintiff exhausted her short-term disability leave, the plaintiff was approved for long-term disability. ECF No. 27-1 at 42, 46; ECF No. 27-10 ¶¶ 10–11.

The plaintiff's failure to accommodate claim is based on the City's decision not to extend the plaintiff's period of telework/reduced caseload/reduced hours beyond September 20, 2022. ECF No. 3 at 4 (alleging that the City's "discriminatory acts" occurred on September 20, 2022). The City argues that summary judgment is warranted in its favor on the plaintiff's failure to accommodate claim because, among other reasons, the plaintiff's only requested accommodation was unreasonable as a matter of law. ECF No. 27 at 14–15. Specifically, the City argues:

> In her accommodation paperwork, [the plaintiff] requested
> that her workload be reduced to eighty (80%) percent of her

> normal caseload. SUMF 6.[6] As a Benefit Program Worker
> II, [the plaintiff's] essential job responsibilities included
> processing claims that citizens made for benefits. SUMF 3.
> [The plaintiff] and other benefits program workers had a
> limited period of time after a new case came in to process
> that information. SUMF 3. Normal cases must be
> processed within thirty days and expedited cases must be
> processed within seven days. SUMF 3; Exh. A at 26:11–13.
> If [the plaintiff's] request for a reduced caseload was
> granted, the remaining twenty (20%) percent of her work
> would still need to be completed – thus requiring the City
> to assign portions of [the plaintiff's] work to others. [The
> plaintiff] agreed that if cases were taken away from her
> that they would need to be assigned to someone else in the
> office. *See* SUMF; Exh. A at 27:3–10; 28:14–25; 29:1–3.
> [The plaintiff's] requested accommodations would have
> required other employees to take on new job
> responsibilities and work harder. Therefore, the requested
> accommodation to reduce her caseload by twenty (20%)
> percent is not reasonable under the ADA.

*Id.* at 15.[7]

---

[6] "SUMF" refers to the Statement of Undisputed Material Facts set forth in the City's memorandum in support of its summary judgment motion.

[7] The plaintiff's Response to the City's summary judgment motion contains two short arguments that are both legally flawed. ECF No. 28 at 1–2. First, the plaintiff argues that the City's motion should be denied because it contains assertions that are contrary to assertions made by the City in its previously filed Motion to Dismiss. *Id.* For example, the plaintiff argues that the City "conceded that [the] [p]laintiff had alleged facts sufficient to establish[] the first and second elements of the failure to accommodate claim" in its Motion to Dismiss. *Id.* However, the City now argues that the plaintiff has failed to establish these elements. *Id.* The plaintiff suggests that the City should not be allowed to hold such "contrary" positions. *Id.*

The plaintiff's argument lacks merit. To survive a motion to dismiss filed pursuant to Federal Rule 12(b)(6), a plaintiff need only *allege* facts sufficient to state a claim for relief against the defendant. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff need not *prove* anything. At the summary judgment phase, the Court determines the sufficiency of the evidence, as opposed to the allegations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). While the City may have conceded at the motion to dismiss phase that the plaintiff adequately alleged certain elements of

Under the ADA, an employer is only required to provide a disabled employee with a reasonable accommodation. *Tartaro-McGowan*, 91 F.4th at 165; *see Williams*, 2024 WL 2746979, at *3. As the Fourth Circuit has explained, "[a]n accommodation is not reasonable if it requires other employees to work harder or the employer to hire additional staff to perform the essential functions of the disabled employee." *Boone*, 858 F. App'x at 623; *see Elledge*, 979 F.3d at 1013; *Crabill*, 423 F. App'x at 323; *Jordan*, 2023 WL 5807844, at *7.

In her deposition testimony, the plaintiff summarized the duties of a Benefits Worker II, indicated that the duties were time sensitive, and acknowledged that the reduction of a Benefits Worker II's caseload would necessarily require the City to assign additional work to others. ECF No. 27-1 at 9–10, 26–29; *see* ECF No. 27-2 at 4 (providing the job description for a Benefits Worker II). Although the City agreed to allow the plaintiff to telework with a reduced caseload and reduced hours from

---

her failure to accommodate claim, the City now argues, at the summary judgment phase, that certain elements are not adequately supported by the evidence. The City's arguments are not inconsistent, but simply reflect the different standards of review applicable at different phases of the litigation process.

The plaintiff also argues in her Response that she should be granted the relief she seeks because the City failed to timely file an Answer to the plaintiff's Complaint. ECF No. 28 at 2. This argument also lacks merit. The City filed a timely Motion to Dismiss in response to the plaintiff's Complaint, as authorized by Federal Rule 12(b). ECF No. 6; *see* Fed. R. Civ. P. 12(b) (identifying the various motions that "must be made before pleading"). On January 24, 2024, the Court entered a Memorandum Order that granted the City's Motion to Dismiss in part and denied the motion in part. ECF No. 10. The City filed a timely Answer 14 days later, as contemplated by the Federal Rules. ECF No. 11; *see* Fed. R. Civ. P. 12(a)(4)(A) (explaining that an answer must be served within 14 days after notice of the Court's denial of a dismissal motion).

August 31, 2022 through September 20, 2022, the plaintiff appears to claim that the City should have allowed her to do so for more than 24 additional weeks, i.e., until March 13, 2023. ECF No. 34 at 1–2. The Court finds that such accommodation is unreasonable as a matter of law, as it would not enable the plaintiff to perform the essential functions of her job and would require other employees within the department to work harder and longer to compensate for the plaintiff's reduced caseload and reduced hours. *See Williams*, 2024 WL 2746979, at *3 (explaining that an accommodation is unreasonable if it "imposes undue financial or administrative hardship on the employer, is unlikely to allow the employee to successfully perform the functions of his [or her] job, or . . . requires a fundamental modification of the position"); *Hannah*, 72 F.4th at 635 (finding that "an accommodation is not reasonable if it does not 'enable[] the employee to perform the essential functions of the job'" (alteration in original) (citation omitted)); *Boone*, 858 F. App'x at 623 (concluding that "[a]n accommodation is not reasonable if it requires other employees to work harder or the employer to hire additional staff to perform the essential functions of the disabled employee"); *Elledge*, 979 F.3d at 1013 (holding that "employers do not need to change a job's essential functions or split them across multiple employees" or "require other employees to work 'harder or longer'" (citations omitted)); *Crabill*, 423 F. App'x at 323 (stating that an employer need not "reallocate essential job functions" or take action that "would require other employees to work harder" (citation omitted)); *Jordan*, 2023 WL 5807844, at *7 (explaining that "an employer does not have to provide 'an accommodation that would require other

employees to work harder' nor does the employer have to change 'the essential functions of' the position to accommodate an employee"). Thus, the Court further finds that the City was under no obligation to grant such a request.

Additionally, as noted above, an employer is not required to "provid[e] the exact accommodation that the employee requested." *Tartaro-McGowan*, 91 F.4th at 167 (citation omitted); *see Elledge*, 979 F.3d at 1011; *Hannah*, 72 F.4th at 636–37. The employer need only provide a reasonable accommodation, and the plaintiff's preference "to be accommodated in some other way does not support a claim of discrimination under the ADA." *Hannah*, 72 F.4th at 636–37. Here, the evidence in the record establishes that although the City did not extend the plaintiff's period of telework/reduced caseload/reduced hours beyond the initially agreed-upon deadline of September 20, 2022, the City did not immediately terminate the plaintiff's employment. ECF No. 27-1 at 42. Instead, the City allowed the plaintiff, who had not been medically cleared to return to work full-time, to take an additional period of leave and continued to work with the plaintiff regarding other return to work options. *Id.* at 42, 48–49; ECF No. 27-10 ¶¶ 10–17.

Based on a thorough review of the record in this action, the Court finds that no reasonable jury could return a verdict for the plaintiff as to her failure to accommodate claim. *See Tartaro-McGowan*, 91 F.4th at 165 (identifying the elements of a failure to accommodate claim). Specifically, the Court finds that the plaintiff has not provided sufficient evidence to enable a reasonable fact-finder to conclude that: (i) the plaintiff identified a reasonable accommodation that would have allowed her

to perform the essential functions of her job;[8] or (ii) the City refused to make such an

accommodation. *Id.*; *see Shin*, 369 F. App'x at 481 (explaining that the plaintiff "bears

---

[8] The plaintiff suggests in her Additional Response that the City "had several vacant positions available during the period in question." ECF No. 34 at 1. The plaintiff did not submit an affidavit or declaration to support her statement. *Id.* Instead, the plaintiff appears to rely on documents attached as Exhibit O to her Additional Response. *Id.* at 1, 58–67. Page one of Exhibit O is a short agenda for a monthly meeting held on September 2, 2022. *Id.* at 58. The agenda appears to contain a list of discussion topics, one of which includes "BPW I Position." *Id.* No further information is provided regarding the "BPW I Position." *Id.* The remainder of Exhibit O consists of a May 9, 2022 spreadsheet titled, "CDHS Benefit Programs Breakout," that appears to identify various positions within the Department of Human Services, some of which are listed as "vacant." *Id.* at 59–67.

The City states that the plaintiff only produced page one of Exhibit O during discovery, despite the City's prior request for "any and all documents which [the plaintiff] may introduce as evidence at the trial of this matter." ECF No. 37 at 6, 9. Thus, the City argues that the plaintiff can only rely on page one of Exhibit O because the remainder of the pages "are not appropriately part of the record." *Id.* at 6. Next, the City argues that even if the Court were to consider the entirety of Exhibit O, the documents contained therein do not create a genuine issue of material fact as to the plaintiff's failure to accommodate claim. *Id.* at 9–11.

Upon review, the Court finds that it may properly strike the portions of Exhibit O that the plaintiff failed to produce in response to the City's discovery requests. Pursuant to Federal Rule 37(c)(1), "[i]f a party fails to provide information . . . , the party is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Here, the City represents to the Court that portions of Exhibit O were responsive to its discovery requests but were not produced by the plaintiff. ECF No. 37 at 6, 9. The plaintiff did not respond to the City's assertions or otherwise establish that her failure to provide the information was "substantially justified" or "harmless." *See* Fed. R. Civ. P. 37(c)(1).

The Court further finds that even if it were to consider the entirety of Exhibit O, the information contained therein does not allow the plaintiff to avoid summary judgment. For example, the general reference to a "BPW I Position" on the September 2, 2022 meeting agenda does not show that (i) the position was vacant, (ii) the plaintiff was qualified for the position, or (iii) that the City, who was already accommodating the plaintiff at that time by allowing her to work with restrictions as a Benefits Worker II, violated the plaintiff's ADA rights by not assigning the plaintiff to this

the burden of identifying an accommodation that would allow a qualified individual to perform the job, as well as the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable"). Therefore, the Court concludes that the City is entitled to judgment as a matter of law.[9] Accordingly, the City's Motion for Summary Judgment (ECF No. 26) is **GRANTED**.

---

position. *See Coleman v. Portfolio Recovery Assocs.*, No. 2:17-cv-204, 2019 WL 11585359, at *13 (E.D. Va. Apr. 17, 2019) (explaining that "[i]t is the plaintiff's burden to show that a vacant position exists for which he [or she] [is] qualified").

Additionally, the Court finds that the remainder of Exhibit O, which shows a "breakout" of positions within the Department of Human Services as of May 9, 2022, is irrelevant to the issues at hand. As of May 9, 2022, the plaintiff was out of the office on FMLA leave, and the plaintiff does not challenge the City's actions with respect to any alleged accommodation failures until September of 2022, approximately four months after the "breakout" document was drafted. ECF No. 27-2 at 6–7; ECF No. 27-10 ¶ 5; ECF No. 3 at 4.

[9] To the extent that the plaintiff intended to claim that the City failed to reasonably accommodate her disability between September 20, 2022, and the plaintiff's March 22, 2023 termination date, the Court finds that such claim could not survive the City's summary judgment challenge. As explained above, the City allowed the plaintiff to remain out on disability leave as of September 20, 2022. ECF No. 27-10 ¶ 10. The City subsequently reached out to the plaintiff, who had since been approved for long-term disability, to request updated medical information and to inquire about the plaintiff's interest in a potential job reassignment. *Id.* ¶ 12. Although the plaintiff was interested in returning to work, the plaintiff did not provide the City with updated medical information. *Id.* The City later agreed to allow the plaintiff to return to work with her initial restrictions in place for a few additional months; however, the plaintiff advised the City that her "doctor ha[d] not cleared [the plaintiff] to return to work at all," and the plaintiff eventually ceased communications with the City. ECF No. 27-7 at 1; ECF No. 27-10 ¶¶ 14–15; ECF No. 27-8 at 5. Under these circumstances, the Court finds that the plaintiff cannot establish that during this timeframe, she was a qualified individual under the ADA, she could perform the essential functions of her job with a reasonable accommodation, or that the City refused to provide her with a reasonable accommodation. *See Tartaro-McGowan v. Inova Home Health, LLC*, 91 F.4th 158, 165 (4th Cir. 2024).

IV.     **CONCLUSION**

For the reasons set forth above, the City's Motion to Strike (ECF No. 35) is

**DENIED**, the City's Motion for Summary Judgment (ECF No. 26), is **GRANTED**,

and this civil action is **DISMISSED**.

The plaintiff may appeal this Opinion and Order by forwarding a written notice

of appeal to the Clerk of the United States District Court, Newport News Division,

2400 West Avenue, Newport News, Virginia 23607. The written notice must be

received by the Clerk within 30 days of the date of entry of this Opinion and Order.

The Clerk is **DIRECTED** to please docket this Opinion and Order in the

Court's electronic filing system.[10]

**IT IS SO ORDERED.**

_____/s/_____
Jamar K. Walker
United States District Judge

Newport News, Virginia
November 20, 2024

---

[10] The Court previously granted the plaintiff's E-Noticing Registration Request. ECF No. 18. Accordingly, when this Opinion and Order is docketed, the plaintiff and counsel for the City will receive an e-mail message from the Court's electronic filing system containing a Notice of Electronic Filing, with a hyperlink to this Opinion and Order.